IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 13, 2016

**STATE OF TENNESSEE v. KEVIN PATTERSON AKA JOHN O'KEEFE VARNER AKA JOHN O'KEEFE KITCHEN[1]**

**Appeal from the Circuit Court for Coffee County**
**No. 41,631F     Walter Kurtz, Judge**

---

**No. M2015-02375-CCA-R3-CD – Filed December 7, 2016**

---

The defendant, Kevin Patterson aka John O'Keefe Varner aka John O'Keefe Kitchen, appeals his Coffee County Circuit Court jury convictions of attempted second degree murder, aggravated assault, and possession of a firearm by a convicted felon, claiming that the trial court erred by refusing to sequester the jury, that the trial court should not have seated potential jurors who had served on the petit jury in a recent criminal trial, that the prosecutor's closing argument was improper, and that the evidence was insufficient to support his conviction of attempted second degree murder. Although we detect no error with regard to the defendant's convictions, we find that the defendant's sentence of life without the possibility of parole constitutes plain error because the State failed to comply with the notice requirements of Code section 40-35-120. Accordingly, we affirm all of the defendant's convictions as well as the five-year sentences imposed for the defendant's convictions of aggravated assault and possession of a firearm by a convicted felon. We reverse the trial court's finding that the defendant was a repeat violent offender, vacate the sentence of life without the possibility of parole, and remand the case for resentencing within the appropriate sentencing range on the defendant's conviction of attempted second degree murder.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed in Part; Reversed and Remanded in Part**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court; ROBERT L. HOLLOWAY, JR., J., filed a concurring opinion; and TIMOTHY L. EASTER, J., filed a concurring and dissenting opinion.

---

[1] The record indicates that the parties agreed to amend the indictment to remove the aliases, but no amended indictment appears in the record. In consequence, we use the defendant's name as listed on the superseding indictment filed in April 2015.

John E. Nicoll, District Public Defender (on appeal); and Daniel Marshall, Nashville, Tennessee (at trial), for the appellant, Kevin Patterson aka John O'Keefe Varner aka John O'Keefe Kitchen.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; and Craig Northcott, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant's convictions relate to events that occurred on February 9, 2013, in Manchester. On that date, the defendant shot Scott Wilfong once in the hip and struck Brandi Frazier in the face, sending her tumbling over the hood of a car.

The evidence adduced at trial established that Mr. Wilfong met the defendant for the first time during the first week of February 2013. The defendant's girlfriend drove Mr. Wilfong and Ms. Frazier to the liquor store in the defendant's truck, and when they returned to the defendant's residence, the defendant pulled his girlfriend from the vehicle by her hair and struck her. He was apparently angry that she had driven his vehicle. Ms. Frazier shouted at the defendant to stop, and Mr. Wilfong, who had exited the vehicle before the defendant came outside, turned back to see what was happening. He saw Ms. Frazier strike the defendant in the head with a bottle of rum. Mr. Wilfong intervened, and the defendant warned Mr. Wilfong, "You need to put your b**** in check." Mr. Wilfong instructed Ms. Frazier to go home, and the defendant went into his house. The entire confrontation lasted "a whole five to ten minutes tops."

Several days later, Mr. Wilfong and Ms. Frazier, along with Ms. Frazier's children, went to the home of J.D. Martin and Heather Gilbert to have dinner and to discuss raising funds to bail a friend, Donald Brewer, out of jail. While there, Mr. Brewer's estranged wife, Natalie Brewer, arrived with the defendant. Ms. Brewer knocked briefly before walking into the house. She walked directly to Ms. Frazier, who was seated on the sofa, and "started cursing at" and behaving aggressively toward Ms. Frazier, who had called Ms. Brewer "a snitch earlier that day." Ms. Gilbert, who had been a friend of Ms. Brewer's since high school, attempted to intervene.

In the meantime, the defendant knocked on the door and asked for Mr. Wilfong, saying that the two men had "unfinished business." Mr. Wilfong, who assumed that the defendant was referring to their only other previous encounter, "proceeded to take it outside," saying that he "was prepared to fight" given that the defendant's "tone" suggested that the two men "were probably about to be in a confrontation." When Mr. Wilfong, who was unarmed, got outside, he saw that the defendant had a handgun. At

that point, Mr. Wilfong told the defendant that he "wasn't scared of the gun" and "motioned toward [the defendant]" as if "to hit him." The defendant "leaned back and shot at the same time, and" both men "froze for a split second." The defendant shot Mr. Wilfong in the right hip. When the defendant trained his gun on Mr. Wilfong a second time, Mr. Wilfong ran into the nearby woods.

From his vantage point, Mr. Wilfong saw Ms. Frazier run from the house. From her vantage point, Ms. Frazier observed the defendant "standing there pointing a gun towards the back of the house . . . like, where the woods were." When the defendant aimed the weapon at her, Ms. Frazier backed up toward Ms. Gilbert's vehicle. The defendant then lowered the weapon and ran toward Ms. Frazier. As he went by, the defendant struck her in the face with enough force to send her flying over the hood of the car. He then got into his truck, where Ms. Brewer, who had already run from the house, was waiting. The two drove away.

Ms. Frazier telephoned 9-1-1, but the police did not arrive at any time that evening, apparently confused about the location of the ruckus. Within an hour, Mr. Wilfong and Ms. Frazier had decided to go after the defendant. Mr. Wilfong procured a bat, and the two drove around for several hours. When their search proved unsuccessful, they went to the hospital so that Mr. Wilfong could seek treatment for his gunshot wound. He explained that he did not go to the hospital immediately because he did not "have a good track record with everything, as far as police and stuff like that" and because he was primarily concerned with "getting even and not feeling like . . . a punk." Doctors decided, based upon an x-ray of Mr. Wilfong's hip, "that because it was clean, that there really wasn't much they could do for [him]. It would cause more damage to take [the bullet] out than leave it in so" they released him.

Both Mr. Wilfong and Ms. Frazier identified the defendant as the perpetrator. The defendant, who had fled the jurisdiction to Las Vegas, Nevada, was not apprehended until a year and a half later.

The defendant elected not to testify and chose to present no proof. The parties stipulated that the defendant had been previously convicted of a felony involving the use of force, violence, and a deadly weapon.

Based upon the proof presented by the State, the jury convicted the defendant of attempted second degree murder, aggravated assault as charged, and possession of a firearm by a convicted felon as charged. Following a sentencing hearing at which the court found the defendant to be a repeat violent offender, the trial court sentenced the defendant to life without the possibility of parole for the conviction of attempted second degree murder. The court imposed sentences of five years for both of

the remaining convictions and ordered that they be served concurrently to one another and to the defendant's sentence of life without the possibility of parole.

The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant contends that the trial court erred by refusing to sequester the jury and by refusing to excuse potential jurors who had served on the petit jury in a criminal trial the week before the defendant's trial. He also claims that the prosecutor's closing argument to the jury contained an incorrect statement of the law and that the evidence is insufficient to support his conviction of attempted second degree murder.

## I. Sequestration

The defendant first asserts that the successor trial judge erred by refusing to honor the order of sequestration filed by the original judge assigned to the case.

"Jury sequestration is now the exception rather than the general rule in Tennessee," *State v. Smith*, 418 S.W.3d 38, 46 (Tenn. 2013), because, in all but capital cases, "jurors shall only be sequestered at the sound discretion of the trial judge," T.C.A. § 40-18-116. In consequence, we review the trial court's decision in this regard for an abuse of discretion.

Initially, as the State correctly points out, the transcript of the parties' discussion and the original trial judge's ruling on this issue is not included in the record on appeal. The record does not contain any evidence the defendant might have presented in support of the motion. The duty to prepare an adequate appellate record falls on the appellant, *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993), and, in the absence of an adequate record, this court must presume the trial court's ruling was correct, *see State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). Without the benefit of these items, plenary appellate review of this issue is impossible. In addition, as the State also correctly points out, the defendant's claim is a conclusory allegation, totally unsupported by any argument or citation to relevant authorities. *See* Tenn. R. App. P. 27(a)(7) ("The brief of the appellant shall contain . . . [a]n argument . . . setting forth . . . the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on[.]"). In consequence, the defendant has waived our consideration of this issue. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

We also observe that the defendant acknowledged that he presented no evidence in support of his original motion to sequester. Only three potential jurors indicated any familiarity with the case, and all three were excused for cause. Under these circumstances, the trial court did not abuse its discretion by refusing to sequester the jury.

## II. Members of the Jury Pool

The defendant next contends that the trial court erred by seating as potential jurors individuals who had served on the petit jury in a criminal case the week before the defendant's trial. The State argues that the defendant waived our consideration of this issue by failing to lodge a contemporaneous objection to the practice and by failing to include the issue as a ground for relief in his motion for new trial. We agree.

During voir dire, it became clear that a number of potential jurors had served on the petit jury in a criminal trial during the previous week. Defense counsel made the following remark about the circumstances:

> I don't have any kind of objection. I'm just – it's just a new thing for me for so many people who had just finished being on a jury to be pulled into this one for a town this size. So I'm just stating that for whatever it's worth. It just seems kind of odd, you know.

The trial court noted that in the past it had been common for jurors to sit for many consecutive weeks and concluded that nothing prohibited the jurors from serving again. The defendant made no further comment and did not raise the issue in his motion for new trial.

The defendant's failure to lodge a contemporaneous objection results in a waiver of the issue. *See* Tenn. R. Evid. 103; Tenn. R. App. P. 36(b) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *see also State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (waiver applies when the defendant fails to make a contemporaneous objection); *State v. Jenkins*, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987); State v. *Rhoden*, 739 S.W.2d 6, 11-12, 18 (Tenn. Crim. App. 1987). The defendant also waived our consideration of this issue by failing to raise the issue in his motion for new trial. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . [any] ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997)

(holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial but were not raised in the motion); *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). Accordingly, we will not consider this issue.

## III. Sufficiency

The defendant asserts that the evidence was insufficient to support his conviction of attempted second degree murder because the State failed to establish that the defendant did not accidentally discharge the firearm. The State contends that the evidence supports the conviction.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, "[s]econd degree murder is . . . [a] knowing killing of another." T.C.A. § 39-13-210(a). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." *Id.* § 39-11-302(b). Criminal attempt occurs when a person "acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." *Id.* § 39-12-101(a)(3). To qualify as a "substantial step," the person's "entire course of action" must be "corroborative of the intent to commit the offense." *Id.* § 39-12-101(b).

The evidence adduced at trial, in the light most favorable to the State, established that the defendant went to Mr. Martin's residence and asked Mr. Wilfong to come outside to settle some "unfinished business," apparently a reference to their earlier encounter. When Mr. Wilfong got outside, the defendant pulled out a handgun and pointed it at Mr. Wilfong. Mr. Wilfong charged, and the defendant fired the gun. Although the defendant argued that he accidentally fired the weapon, the jury, as the trier of fact, was free to reject his theory. In our view, the evidence supports the jury's conclusion that the defendant committed attempted second degree murder.

## IV. Closing Argument

The defendant claims that the prosecutor engaged in misconduct by improperly arguing to the jury an incorrect statement of the law. The State again asserts that the defendant waived consideration of this issue by failing to lodge a contemporaneous objection and by failing to raise the issue in his motion for new trial. Again, we agree with the State.

The defendant contends that the following argument was improper:

> . . . . You stick a gun in someone's face after you have picked a fight with them, even if you buy the theory that he was stepping back that he accidentally pulled the trigger, guess what, he acted with awareness that his conduct could result in the death of Scottie Wilfong. The fancy term for that is attempted second-degree murder. So based on what the defendant just argued, you-all are the barrier between attempted second-degree murder and attempted first degree murder.

The defendant argues that this argument was a misstatement of the law because second degree murder is a result-of-conduct offense.

As stated above, the failure to lodge a contemporaneous objection to the challenged argument and to raise the issue in the motion for new trial results in the waiver of plenary review. Moreover, we see no basis for noticing the error despite waiver. *See* Tenn. R. App. P. 36(b). Even assuming that the argument was improper, in light of the overwhelming evidence of the defendant's guilt, it would be harmless. Thus, nothing suggests that "'a substantial right of the accused [was] adversely affected'" or that "'consideration of the error is "necessary to do substantial justice."'" *See State v. Smith*, 24 S.W.3d 274, 282, 283 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).

*V. Sentencing*

Although not raised by the parties, we notice plain error in the defendant's sentence of life without parole. This court will grant relief for plain error pursuant to Rule 36(b) only when:

> "(1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake."

*State v. Cooper*, 321 S.W.3d 501, 506 (Tenn. 2010) (quoting *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010)).

An offender becomes qualified for sentencing as a repeat violent offender by meeting the requirements in Code section 40-35-120(a), which provides three avenues of qualification. Subsections (a)(1) and (a)(2) of Code section 40-35-120 provide for repeat violent offender sentencing for an offender convicted of a crime classified as a violent offense in subsection (b)(1) when the defendant "[h]as at least two (2) prior convictions for offenses classified in subdivision (b)(1) or (b)(2) as a violent offense." T.C.A. § 40-35-120(a)(1)-(2). Subsections (a)(3) and (a)(4) provide for repeat violent offender sentencing for an offender convicted of a crime classified as a violent offense in subsection (c)(1) when the defendant "[h]as at least one (1) conviction for an offense classified in subdivision (c)(1) or (c)(2) as a violent offense." *Id.* § 40-35-120(a)(3)-(4). Subsections (a)(5) and (a)(6) provide for repeat violent offender sentencing for a defendant convicted of an offense classified as a violent offense in subsection (d)(1) when the defendant "[h]as at least one (1) prior conviction for an offense classified in subdivision (d)(1) or (d)(2) as a violent offense with the exception of the prior offense of robbery by use of a deadly weapon as listed in § 40-35-118(a)." *Id.* § 40-35-120(a)(5)-(6). Although there is some overlap among the lists of offenses enumerated as violent offenses in subsections (b)(1), (c)(1), and (d)(1), the lists are not identical. *See id.* § 40-35-120(b)(1), (c)(1), (d)(1). As a result, an offense may qualify as a "violent offense" under one subsection of Code section 40-35-120 but not another.

In addition to the three distinct avenues of qualification, Code section 40-35-120 ties the method of counting prior convictions as well as the definition of a qualifying "prior conviction" to the avenue of repeat violent offender sentencing that the State seeks in an individual case. To this end, Code section 40-35-120(e) provides:

(e) In determining the number of prior convictions a defendant has received:

(1) "Prior conviction" means a defendant serves and is released from a period of incarceration for the commission of an offense or offenses so that a defendant must:

(A) To qualify under subdivision (a)(1) and (a)(2), have served two (2) separate periods of incarceration for the commission of at least two (2) of the predicate offenses designated in subdivision (b)(1) or (b)(2) before committing an offense designated in subdivision (b)(1);

(B) To qualify under subdivision (a)(3) and (a)(4), at least one (1) separate period of incarceration for the commission of a predicate offense designated in subdivision (c)(1) or (c)(2) before committing an offense designated in subdivision (c)(1); or

(C) To qualify under subdivision (a)(5) and (a)(6), at least one (1) separate period of incarceration for the commission of a predicate offense designated in subdivision (d)(1) or (d)(2), with the exception of the prior offense of robbery by use of a deadly weapon as listed in § 40-35-118(a), before committing an offense designated in subdivision (d)(1);

T.C.A. § 40-35120(e)(1). The statute also contains a specific definition of "separate period of incarceration":

(2) "Separate period of incarceration" includes a sentence to a community correction program pursuant to chapter 36 of this title, a sentence to split confinement pursuant to § 40-35-306 or a sentence to a periodic confinement pursuant to § 40-35-307. Any offense designated as a violent offense pursuant to subsection (b), (c) or (d) that is committed while incarcerated or committed while the prisoner is assigned to a program whereby the prisoner enjoys the privilege of supervised release into the community, including, but not limited to, work release, educational release, restitution release, medical furlough or

that is committed while on escape status from any correctional institution shall be considered as a separate period of incarceration;

*Id.* § 40-35-120(e)(2). Juvenile adjudications do not become qualifying prior convictions "unless the juvenile was convicted of the predicate offense in a criminal court and sentenced to confinement in the department of correction." *Id.* § 40-35-120(e)(3).

"Prior convictions" include convictions under the laws of any other state, government or country that, if committed in this state, would have constituted a predicate offense in subsection (b), (c) or (d) if there are separate periods of incarceration in the other state as required by subdivision (e)(1). If a felony from a jurisdiction other than Tennessee is not a named predicate offense specified in subsection (b), (c) or (d) in this state and if the elements of the felony are the same as a designated predicate offense, it shall be considered a prior conviction; provided, that there are separate periods of incarceration in the other state as required in subdivision (e)(1).

*Id.* § 40-35-120(e)(4).

Code section 40-35-120 also requires that the State provide pretrial notice of its intent to seek sentencing as a repeat violent offender:

The district attorney general shall file a statement with the court and the defense counsel within forty-five (45) days of the arraignment pursuant to Rule 10 of the Rules of Criminal Procedure that the defendant is a repeat violent offender. The statement, which shall not be made known to the jury determining the guilt or innocence of the defendant, shall set forth the dates of the prior periods of incarceration, as well as the nature of the prior conviction offenses. If the notice is not filed within forty-five (45) days of the arraignment, the defendant shall be granted a continuance so that the defendant will have forty-five (45) days between receipt of notice and trial.

T.C.A. § 40-35-120(i)(2).

In *State v. Cooper*, the supreme court examined the notice requirement in Code section 40-35-120(i)(2). After Cooper was charged with aggravated rape and aggravated assault, the State "filed a 'Notice of Intention to Use Prior Bad Acts for Impeachment and Enhancement of Sentence'" that purported to "'give[] notice of defendant's prior convictions'" and that listed "'Sodomy (felony) 3 counts' as a prior conviction of Mr. Cooper in the circuit court in Klamath Falls, Oregon." That notice did not "mention Mr. Cooper's status as a repeat violent offender." *Cooper*, 321 S.W.3d at 503. After Cooper was convicted of the charged offenses,

> the State filed a "Sentencing Position" in which it asserted that the conviction placed Mr. Cooper in the category of a "repeat violent offender" requiring a sentence of "imprisonment for life without possibility of parole" pursuant to Tennessee Code Annotated section 40-35-120 (2006), commonly referred to as the "three strikes" law. The State based this assertion on the notice "furnished . . . on May 12, 2003[,] that it would use prior sodomy convictions in Oregon in 1995 for sentencing purposes."

*Id.* at 504. As the supreme court observed, Cooper did not object to the timing or sufficiency of the State's notice of his status as a repeat violent offender. *Id.* "The trial court raised the issue sua sponte and concluded that Mr. Cooper had not shown that he was prejudiced by deficiencies in the State's notice." *Id.* The defendant raised the issue of the sufficiency of the notice in his motion for new trial but did not raise the issue on appeal. This court examined the issue for plain error and concluded that the defendant could not establish prejudice despite the defective pretrial notice, noting Cooper's awareness that the State was seeking repeat violent offender sentencing and the evidence presented at the sentencing hearing. *State v. Ralph Byrd Cooper, Jr.*, No. E2008-02044-CCA-R3-CD (Tenn. Crim. App., Knoxville, Aug. 3, 2009), *aff'd in part, rev'd in part*, 321 S.W.3d 501 (Tenn. 2010) ("Although the post-verdict filing of the Code section 40-35-120(i)(2) statement clearly breached an unequivocal rule of law, we cannot glean from the record whether the violation of the statute adversely affected the defendant.").

The supreme court first rejected Cooper's argument that the State had failed to establish beyond a reasonable doubt that he had served separate periods of incarceration as required by Code section 40-35-120, concluding "that the certified Oregon judgment constituted proof beyond a reasonable doubt that Mr. Cooper had previously served a separate period of incarceration." *Id.* at 506.

The court then considered Cooper's challenge to the sufficiency of the State's notice seeking a sentence of life without parole under the repeat violent offender

statute. Examining first "the pretrial filing on May 12, 2003," the court observed that the notice "failed to state that Mr. Cooper is a repeat violent offender" and "also failed to set forth the nature of the sodomy conviction as a qualifying prior conviction and the dates of the prior period of incarceration, both of which are required by section 40-35-120(i)(2)." *Id.* The court concluded that "[a]s a result of these omissions, the May 12, 2003 filing did not qualify as notice pursuant to the repeat violent offender statute." *Id.* The high court also concluded that "[t]he failure to file this notice prior to trial breached a clear and unequivocal rule of law that post-trial filing of the 'Sentencing Position' failed to cure." *Id.*

The court noted that it had not before "addressed the effect of filing notice of the repeat violent offender status after trial and whether such notice affects a substantial right of the defendant" and observed that "[t]he notice requirement in the repeat violent offender statute is similar to that in Tennessee Code Annotated section 40-35-202(a) (2006), which requires the State to provide notice not less than ten days before trial of its intent to seek enhanced punishment." Ultimately, however, the court concluded that, "[i]n light of the similar punishments," the notice requirement in Code section 40-35-120(i)(2) was more akin to "the notice requirement for intent to seek imprisonment for life without the possibility of parole for first degree murder." *Cooper*, 321 S.W.3d at 507. The high court thus held that the Code section 40-35-120(i)(2) notice must be filed prior to trial and must comply with the requirements set forth in the statute to be effective. *See id.* at 507-08. The supreme court *did not consider* the ameliorative effects of Cooper's actual knowledge of the State's intention to have him declared a repeat violent offender or the evidence presented at the sentencing hearing.

In this case, the record clearly establishes what occurred in the trial court. On January 1, 2015, 93 days after the filing of the original indictment and four months before the filing of the superseding indictment, the State filed a document styled "Notice of Prior Convictions." The document indicates that the State intended that this pleading operate as notice "pursuant to [R]ule 609(a)(3) of the Tennessee Rules of Evidence and T.C.A. § 40-35-202(a) . . . of the following convictions that the State will seek to introduce to impeach the defendant's testimony, and/or to enhance the defendant's punishment." Unlike the deficient pretrial notice in *Cooper*, the document filed in this case provides that the State "also hereby gives notice to the defendant of its intent to seek to have him declared as a Repeat Violent Offender pursuant to T.C.A. § 40-35-120." The notice document does not indicate which of the provisions for repeat violent offender sentencing that the State seeks.

Like the pretrial notice deemed insufficient in *Cooper*, the notice document in this case lists the defendant's prior convictions, including theft (1985), possession of a firearm (1987), conspiracy (1987), aggravated assault (1990), facilitation of second

degree murder (1992), possession of a weapon (1993), and second degree murder (1994), but does not indicate which of the prior convictions are qualifying convictions for sentencing as a repeat violent offender. Because the defendant was charged with attempted second degree murder, an offense classified as a violent offense in Code section 40-35-120(b)(1)(B), he was only subject to repeat violent offender sentencing if he had "at least two (2) prior convictions for offenses classified in subdivision (b)(1) or (b)(2) as a violent offense." T.C.A. § 40-35-120(a)(1)-(2). His previous convictions of facilitation of second degree murder and second degree murder appear to satisfy this requirement. In *Cooper*, however, the supreme court signaled that, for purposes of complying with the notice provision of Code section 40-35-120, mere listing of the name of the conviction without indicating specifically that it is a qualifying prior conviction for repeat violent offender status does not comply with the statutory requirements. The supreme court determined that the notice in *Cooper*, which "list[ed] 'Sodomy (felony) 3 counts' as a prior conviction of Mr. Cooper in the circuit court in Klamath Falls, Oregon" did not properly "set forth the nature of the" prior convictions as qualifying convictions for repeat violent offender status. *Cooper*, 321 S.W.3d at 503 (Tenn. 2010); *see also Ralph Byrd Cooper, Jr.*, No. E2008-02044-CCA-R3-CD ("Prior to trial, the State filed a 'Notice of Intention to Use Prior Bad Acts for Impeachment and Enhancement of Sentence,' listing the defendant's previous convictions. This 'notice' included previous convictions of burglary and grand larceny in Roane County in 1988; convictions of theft of rental property and aggravated robbery in Blount County in 1995; two separate convictions of public intoxication in 1985 and 1987 and three convictions of passing worthless checks in 1997 in Knox County; and one conviction of theft in Klamath Falls, Oregon, in 1993. Further, the notice included an Oregon conviction on September 12, 1995, of three counts of 'Sodomy (felony).'"). Given the complex framework of qualifying prior convictions and the severity of the sentence to be imposed, it makes sense that the supreme court would require more than a list of the defendant's prior convictions without setting forth which of those convictions are qualifying convictions as provided in Code section 40-35-120(a). Additionally, like the pretrial notice deemed insufficient in *Cooper*, the notice document in this case does not list "the dates of the prior period of incarceration," which is "required by section 40-35-120(i)(2)." *Cooper*, 321 S.W.3d at 506. Such information is a determinant in identifying prior qualifying convictions.

Although the court appeared, at one point, to indicate that substantial compliance with the notice requirement of Code section 40-35-120 would suffice, *see id.* (observing that "the only substantially compliant notice was filed after trial and therefore was ineffective), the court specifically held that "[a]s a result of the[] omissions" in the pretrial notice, that "filing *did not qualify as notice pursuant to the repeat violent offender statute*," *id.* at 506 (emphasis added.) Moreover, the court reversed the conclusion that this court had reached that, because the defendant had actual notice and

-13-

because the State presented evidence to support beyond a reasonable doubt the finding that Cooper was a repeat violent offender, Cooper was not prejudiced by the State's failure to comply with the notice provision of Code section 40-35-120. Ultimately, Cooper's failure to object, the presence of other pleadings that put Cooper on notice that the State was seeking repeat violent offender sentencing, and the presentation of proof at the sentencing hearing had no bearing on the court's decision to reverse Cooper's sentence.

As indicated, two of the three omissions that rendered the notice ineffective in *Cooper* are present here. The document did not "set forth the nature of the" defendant's prior convictions "as . . . qualifying prior conviction[s] and the dates of the prior period of incarceration, both of which are required by section 40-35-120(i)(2)." *Id.* at 506. In consequence, the document filed by the State "did not qualify as notice pursuant to the repeat violent offender statute." *Id.* The State's failure to file a sufficient notice pursuant to the repeat violent offender statute prior to the defendant's trial breached a clear and unequivocal rule of law, and the record contains no indication that the defendant waived the issue for tactical reasons. *See id.* Additionally, because the State failed to comply with Code section 40-35-120(i)(2), "the sentence of imprisonment for life without the possibility of parole was not authorized." *Id.* at 507. As was true in *Cooper*, "the unauthorized sentence adversely affected a substantial right of" the defendant, and "remedying this error is in the interest of substantial justice." *Id.* at 508. Therefore, we reverse the trial court's finding that the defendant was a repeat violent offender, vacate the sentence of life without the possibility of parole, and remand the case for resentencing in accordance with the State's notice filed on January 1, 2015, "as a multiple, persistent, or career offender pursuant to Tennessee Code Annotated section 40-35-202." *Id.*

## VI. Conclusion

Based upon the foregoing analysis, we affirm the defendant's convictions and the five-year sentences imposed by the trial court for the convictions of aggravated assault and possession of a firearm by a convicted felon. Because the notice filed by the State did not qualify as notice pursuant to the repeat violent offender statute, we reverse the trial court's finding that the defendant was a repeat violent offender, vacate the sentence of life without the possibility of parole, and remand the case for resentencing.

_____
JAMES CURWOOD WITT, JR., JUDGE